COMMONWEALTH of Pennsylvania, Appellee

v.

Allen C. PERREAULT, Appellant.

Superior Court of Pennsylvania.

Submitted April 30, 2007.

Filed July 17, 2007.

 

Charles Thomas, Jr., Lancaster, for appellant.

Karen L. Mansfield, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: STEVENS, GANTMAN, and TAMILIA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lancaster County following the revocation of Appellant's probation. For violating the Lancaster County Sex Offender Program Rules and Regulations governing his probation, Appellant received a sentence of one year less one day to two years less one day incarceration. He challenges the sufficiency of the evidence and the constitutionality of the probation condition he was found to have violated. We affirm.

¶ 2 The trial court opinion provides an apt factual and procedural history of Appellant's case:

On September 18, 1998, Appellant appeared before the Honorable Paul K. Allison and entered a plea of guilty to interception, disclosure or use of wire, electronic or oral communications,[ ] and to the summary offense of harassment (two counts).[ ] This case involved the video and audio taping of Lisa Hardy in her bathroom and bedroom by Appellant through walls dividing their respective residences. . . . Perreault . . . was sentenced to five years probation and was ordered to pay fines and costs. The Court further ordered that Perreault submit to any counseling or treatment deemed necessary by the Adult Probation and Sex Offenders Program. . . .

A capias[ ] was filed on May 3, 2001, charging Perreault with violating the rules and regulations of probation as a result of probation officers having discovered three suspected marijuana pipes during a search of Appellant's apartment on May 2, 2001. During the same home visit, the probation officers discovered Perreault's extensive pornography collection which included child pornography, bestiality, and sadomasochistic pornography.

On June 4, 2001, Perreault appeared before Judge Allison for a probation violation hearing. At that time, a violation was found and Perreault's probation was

revoked. He was sentenced to a new term of five years' probation on all charges and made immediately eligible for parole. The court further ordered that Perreault submit to any counseling or treatment deemed necessary by the Adult Probation and Sex Offenders Program,[ ] that he have no unsupervised contact with minor children, that he have no computer during his supervision, that he have no obscene materials or materials depicting sexual conduct or nudity, and that all other sex offender conditions should apply....

Subsequently, a second capias was filed on August 13, 2003, charging Perreault with violating his probation as a result of being discharged on August 11, 2003, from sex offender counseling by T.W. Ponessa & Associates for lack of participation in treatment and ongoing denial of illegal sexual behavior towards children.[ ] His probation officer had also learned that Appellant was exhibiting high risk factors for sexual offense recidivism, i.e., viewing pornography and consuming alcohol.

On September 30, 2003, Perreault appeared before the court for his second probation violation hearing. At that time, a violation was found and Perreault's probation was revoked. He was sentenced to 6 to 23 months' incarceration, split sentence, and consecutive three years' probation. The *court further* ordered drug and alcohol evaluation/treatment as recommended by the Probation Office, as well as psychological and/or psychiatric evaluation/treatment as deemed necessary. All original conditions and all sexual offender conditions were to apply.

Consequently, on October 27, 2003, a psychiatric evaluation was completed by Anthony F. Russo, M.D. Dr. Russo found Appellant to be at high risk for sexual deviant behavior and recom-

mended that he be placed in a network of services that could keep a very close watch on his treatment and activities, supervise his medications, and randomly conduct urine screens to detect polysubstance abuse. Dr. Russo also recommended that, upon release from prison, Perreault be placed on house arrest with electronic monitoring in order to protect Appellant, as well as other possible victims.

The Probation Office, therefore, requested that the sentence imposed on September 30, 2003, be amended to include that Appellant be placed on house arrest with electronic monitoring because of his "very high risk to the community and to reoffend based on his deviant behaviors and most recent psychiatric evaluation." On December 23, 2003, the Court amended the sentencing conditions imposed on the second probation violation and ordered that, prior to release from Lancaster County Prison, Appellant was to have a home assessment completed and be released on house arrest with electronic monitoring through the Adult Probation/Parole Office of Standard Supervision.

* * *

Perreault was ultimately paroled on June 9, 2005, after completing his maximum sentence. His probation began on June 9, 2005, and was to expire on June 9, 2008. After meeting with his probation officer on June 10, 2005, Perreault signed a document entitled, "Sex Offender Program Rules and Regulations," which identified 18 pre-printed "rules/regulations and conditions," as well as six "special conditions" added by the Court. By signing this document, Appellant acknowledged that he read and understood all of the sex offender rules, regulations, and conditions of his probation/parole.

Thereafter, a capias was issued on February 13, 2006, charging Perreault with violating his probation on or about February 4, 2006, as a result of having admitted to viewing pornography in violation of Condition No. 14 of the Sex Offender Program Rules and Regulations[, detailed *infra*, but which prohibited owning, possessing, or viewing obscene or sex-related materials, including, *inter alia*, depictions of nudity.] [footnote omitted]. On July 1, 2006, Perreault appeared before the Court for his third probation violation hearing. Defense counsel argued against Appellant's probation revocation on two grounds: (1) there was insufficient evidence to support a violation of Condition No. 14; and (2) Condition No. 14 is unconstitutionally vague and overbroad. Based, however, upon Appellant's admission of having viewed what he considered to be pornographic material, a violation was found and Perreault's probation was revoked. Sentencing was deferred pending the submission of a pre-sentence investigation report.

Perreault appeared before the court on August 18, 2006, for sentencing on the probation violation. At that time, defense counsel again challenged the constitutionality of Condition No. 14 [and incorporation of it into Appellant's new sentence].... The court noted the objection and overruled it.

Perreault filed a direct appeal with the Superior Court of Pennsylvania on September 15, 2006, from his judgment of sentence entered on August 18, 2006. Pursuant to the court's directive, Perreault furnished a concise statement of matters complained of on appeal [setting forth the five issues now before this Court].

Trial Court Pa.R.A.P. 1925(a) Opinion dated 11/28/06 at 1–7 (footnotes omitted).

¶ 3 Appellant raises the following issues for our review:

I. WHETHER THE COURT BELOW ERRED IN FINDING THE APPELLANT IN VIOLATION OF HIS PROBATION BECAUSE THE VIOLATION HAD NOT BEEN PROVEN BY SUFFICIENT EVIDENCE.

II. WHETHER THE COURT BELOW ERRED IN FINDING THE APPELLANT IN VIOLATION OF HIS PROBATION BECAUSE CONDITION 14 IS UNCONSTITUTIONALLY VAGUE.

III. WHETHER THE COURT BELOW ERRED IN FINDING THE APPELLANT IN VIOLATION OF HIS PROBATION BECAUSE CONDITION 14 IS UNCONSTITUTIONAL OVERBROAD.

IV. WHETHER THE COURT BELOW ERRED IN RESENTENCING THE APPELLANT BY REIMPOSING CONDITION 14 AS IT IS UNCONSTITUTIONALLY VAGUE.

V. WHETHER THE COURT BELOW ERRED IN RESENTENCING THE APPELLANT BY REIMPOSING CONDITION 14 AS IT IS UNCONSTITUTIONALLY OVERBROAD.

Brief for Appellant at 4.

¶ 4 When we consider an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. 42 Pa.C.S. § 9771(b)." *Commonwealth v. Fish*, 752 A.2d 921, 923

(Pa.Super.2000), *appeal denied,* 565 Pa. 637, 771 A.2d 1279 (2001) (citation omitted). Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. *Commonwealth v. Smith,* 447 Pa.Super. 502, 669 A.2d 1008, 1011 (Pa.Super.1996). The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future antisocial conduct. *Commonwealth v. Sims,* 770 A.2d 346, 350 (Pa.Super.2001).

∎ ¶ 5 Here, Appellant first claims the evidence was insufficient to prove a violation of his probation. A challenge to the sufficiency of the evidence is

> a question of law subject to plenary review. We must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

*Commonwealth v. Snyder,* 870 A.2d 336, 346–47 (Pa.Super.2005) (citations and quotation marks omitted).

¶ 6 At the revocation hearing, the Commonwealth sought to establish that Appellant had violated condition No. 14 of his probation. Condition No. 14 provides as follows:

> I may not own, possess, or view any obscene materials or materials which depict or describe sexual conduct includ-

ing, but not limited to, photographs, magazines, movies, DVDs, or videotapes depicting nude men, women, or children. I will not be a member of nor [sic] a recipient of any adult movies, catalogues, literature, or advertisement.

Condition No. 14 of the Lancaster Sex Offender Program Rules and Regulations. Appellant signed his assent to this and all conditions of his probation on June 10, 2005.

¶ 7 Two Commonwealth witnesses testified that Appellant admitted to conduct clearly violating the restrictions set forth in Condition No. 14. According to the polygraph expert who examined Appellant on February 9, 2006, Appellant admitted during the session that he had on two occasions in the last month watched X-rated movies. The first viewing occurred a month before the test, the second one just days before, when, Appellant said, he purchased what he called an "X-rated" movie, masturbated to it at his home, and destroyed the movie afterward. N.T. 6/1/06 at 6, 8–9. The polygraph examiner's testimony was corroborated by Appellant's probation officer, who testified that Appellant made the same admission to him. N.T. at 10–11.

¶ 8 This unrebutted testimony undoubtedly proved by a preponderance of the evidence that Appellant twice violated Condition No. 14 in the month or so prior to his revocation hearing. By his own out-of-court admissions, which were clearly admissible at the hearing, Appellant owned, possessed, and viewed materials depicting sexual conduct. Though he did not describe in detail the conduct depicted in the movies, he did characterize them as "X-rated." Given Appellant's extensive familiarity with sexually explicit materials, the court did not take his characterization as exaggeration but, rather, reasonably assigned to it the generally-accepted mean-

ing of the term "X-rated," i.e., material containing graphic sexual content. The fact that Appellant masturbated to at least one of the movies, destroyed it afterward, and eased his conscience afterward by making a polygraph exam confession to his actions further supports the conclusion that the movies depicted sexual conduct prohibited under Condition No. 14. In light of this evidence, Appellant's sufficiency challenge fails.

¶ 9 In his remaining issues, Appellant claims Condition No. 14 is unconstitutionally vague and overbroad. Vagueness lies in the condition's ban against possessing materials containing nude depictions, he argues, because such a broad proscription prevents the reasonable probationer from discerning which materials are actually prohibited and delegates the decision to a probation officer and his unpredictable, subjective beliefs. Overbreadth, too, stems from the nudity ban, Appellant argues, because the restriction would necessarily apply even to nude representations

in serious art protected under the First Amendment. We disagree, finding Appellant has based his claims upon a mischaracterization of Condition No. 14.

¶ 10 Supervisory release conditions are subject to the constitutional doctrines of vagueness and overbreadth.[1] *See United States v. Loy*, 237 F.3d 251, 259–260 (3rd Cir.2001).[2] Convicted felons sentenced to a term of supervised release, however, possess circumscribed constitutional rights relative to ordinary persons. *Id.* at 259. *Accord Commonwealth v. Hartman*, 908 A.2d 316, 321 (Pa.Super.2006) (noting a probationer does not enjoy the full panoply of constitutional rights).

¶ 11 Regarding probation regulations placed upon sex offenders in particular, federal courts have held that most regulations restricting such a probationer's right to possess sexual material would be reasonably and necessarily related to the government's legitimate interest in supervising the [probationer's] activities and thus

1. We review vagueness and overbreadth claims under the strong presumption that legislative enactments do not violate the constitution. *Commonwealth v. Davidson*, 860 A.2d 575, 583 (Pa.Super.2004). One who challenges the constitutionality of a statute, therefore, carries a heavy burden of persuasion. *Id.* "A statute will be found unconstitutional only if it clearly, palpably, and plainly violates the constitution; all doubts are to be resolved in favor of a finding of constitutionality." *Id.*

Arising from the Fourteenth Amendment's Due Process Clause, the void-for-vagueness doctrine requires that a statute or rule under attack be sufficiently definite so that people of ordinary intelligence can understand what conduct is prohibited, and so as not to create or encourage arbitrary or discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). When a statute is purportedly vague and arguably involves constitutionally protected conduct, vagueness analysis will necessarily intertwine with overbreadth analysis. *See Hoffman Estates v. Flipside, Hoffman Estates,*

*Inc.*, 455 U.S. 489, 494 n. 6, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

A form of First Amendment challenge, the overbreadth doctrine prohibits an enactment, even if clearly and precisely written, from including constitutionally protected conduct within its proscriptive reach. *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In order to prevail on an overbreadth challenge, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). *See also Davidson*, 860 A.2d at 583 ("When the overbreadth of the statute is substantial, judged in relation to its legitimate sweep, it may not be enforced against anyone until it is narrowed to reach only activity unprotected by the constitution.").

2. Though not binding on this Court, the decisions of the federal courts of appeal cited herein are instructive in addressing the constitutional issues Appellant raises.

would not violate the First Amendment. *See Farrell v. Burke,* 449 F.3d 470, 497 (2d Cir.2006) (citation and quotation marks omitted); *United States v. Crandon,* 173 F.3d 122, 127–28 (3d Cir.1999) (rejecting constitutional challenge to probationary condition restricting sex offender's internet use; condition directly related to probationer's criminal activities, to goal of deterrence, and to protecting public). Similarly, this Court, in rejecting a sex offender's challenge to the discretionary aspect of his probationary sentence, held that restricting the offender's Internet access was rationally related to the important goals of protecting the public and preventing the offender from relapsing into the practice of accessing Internet sites of child pornography. *Commonwealth v. Hartman,* 908 A.2d 316, 321 (Pa.Super.2006).

¶ 12 We conclude that Condition No. 14's restriction on viewing or possessing nude depictions is neither vague nor overbroad. Contrary to Appellant's claim, the restriction does not stand alone, unqualified or untied to a larger, well-defined prohibition against sexual materials, so as to impose a ban against "mere nudity" as found in, *inter alia,* works of serious art. Indeed, Condition No. 14 incorporates the nudity restriction within the larger prohibition against possessing "obscene materials, or materials which depict or describe sexual conduct...." Any questions as to the generally accepted meaning of the terms "obscene," or "sexual conduct" in our criminal justice system, moreover, may be answered by reference to 18 Pa.C.S.A. § 5903 "Obscene and other sexual materials and performances," [3] and its explication of the sexual content contemplated therein.

¶ 13 The terms of Condition No. 14, therefore, being both specific and well-recognized in the context of law enforcement against sex offenses give probationers of ordinary intelligence clear guidance as to what sex-related content is prohibited, and do not encourage arbitrary enforcement. Nor does Condition No. 14 sweep overbroadly into constitutionally protected conduct, as the condition is applied only to probationers—a class of persons whose constitutional rights are circumscribed—and directly relates to the government's legitimate interest in reducing sex offender probationers' likelihood of recidivism.

¶ 14 As there exists no constitutional infirmity with the terms and conditions to Appellant's probationary release, his various vagueness and overbreadth challenges fail. Accordingly, we affirm the judgment of sentence entered below.

¶ 15 Judgment of sentence is affirmed.

---

**3.** Subsection 5903(b) "Definitions" provides the following relevant definitions:

"Obscene." Any material or performance, if:

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.
* * *
"Sexual conduct." Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals.

18 Pa.C.S.A. § 5903(b).